**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

STEPHEN DUDEK and DOREEN CROSS, )
                                 )
              Plaintiffs, )       No. 2:19-cv-3237-DCN
                                   )
         vs. )             **ORDER**
                                   )
COMMONWEALTH LAND TITLE )
INSURANCE COMPANY, )
                                   )
             Defendant. )
_____ )

        This matter is before the court on plaintiffs Stephen Dudek and Doreen Cross's (collectively, "plaintiffs") motion for partial summary judgment, ECF No. 14, and defendant Commonwealth Land Title Insurance Company's ("Commonwealth") motion for summary judgment, ECF No. 18. For the reasons set forth below, the court denies plaintiffs' motion and grants Commonwealth's motion.

## I.   BACKGROUND

        This insurance dispute arises from a long-standing and enduring legal battle over a six-acre tract of land in Dorchester County (the "Property"). Most of the relevant facts, including those that follow, are undisputed. The Property was originally part of an eight-acre tract until the original sellers subdivided the land into two parcels, the Property and an adjacent two-acre tract, when they decided to sell the land. In 2012, plaintiffs entered into a contract with the sellers to purchase the Property (the "Purchase Contract"). Shortly after the sellers and plaintiffs signed the Purchase Contract, Molly Morphew ("Morphew") entered into a back-up contract with the sellers, which would place

1

Morphew under contract for the Property in the event that plaintiffs' Purchase Contract fell through before plaintiffs' closing date.

At some point prior to the closing date, a dispute arose between the sellers, plaintiffs, and Morphew over who could purchase the Property. It did not take long for that dispute to escalate into litigation. In 2013, plaintiffs and Morphew each sued the sellers for specific performance of their respective contracts in state court. Those suits were consolidated into a single action, state court civil action number 2013-CP-18-00183 (the "2013 Action"). At some point during the litigation, the sellers conveyed the two-acre tract adjacent to the Property to Morphew. Plaintiffs ultimately prevailed in the 2013 Action, and the Dorchester County Master-In-Equity granted plaintiffs specific performance of the Purchase Contract. In 2016, Morphew appealed the Master-In-Equity's ruling and, while her appeal was pending, filed a separate lawsuit in state court related to the sale of the Property, civil action number 2016-CP-18-1706 (the "2016 Action"). On January 11, 2017, the South Carolina Court of Appeals affirmed the Master-In-Equity's ruling in favor of plaintiffs in the 2013 Action. On January 31, 2017, South Carolina Circuit Court Judge Deadra Jefferson dismissed Morphew's complaint in the 2016 Action. Morphew appealed Judge Jefferson's dismissal, and the appeal remains pending.

Finally, on June 5, 2017, plaintiffs closed on the Purchase Contract. At the closing, plaintiffs purchased a title insurance policy (the "Policy") from Commonwealth, which provided plaintiffs with insurance against adverse claims to their title to the Property, subject to various exceptions and exclusions. On June 12, 2017, Morphew, proceeding pro se, filed another lawsuit against plaintiffs in state court (the "2017

Action"), requesting that the court place the Property in a constructive trust based on plaintiffs' alleged abuse of process and fraud during the 2013 and 2016 Actions. Plaintiffs retained counsel to represent them in the 2017 Action, and on February 20, 2018, South Carolina Circuit Court Judge Diane Goodstein dismissed Morphew's complaint, finding that her claims were either not cognizable under SCRCP 12(b)(8) or barred by the doctrine of res judicata. Morphew appealed that decision, and the appeal remains pending.

After dismissal of the 2017 Action, on September 19, 2018, Morphew filed yet another lawsuit against plaintiffs in state court (the "2018 Action") seeking to enforce a provision of the Purchase Contract that purports to grant a water and sewer easement to the adjacent two-acre property, now owned by Morphew, and seeking damages for various torts she alleges against plaintiffs. Plaintiffs moved to dismiss Morphew's complaint in the 2018 Action, and that motion remains pending. On April 25, 2019, plaintiffs tendered notice of the 2018 Action to Commonwealth and demanded that Commonwealth provide them with a defense. On April 29, 2019, plaintiffs updated their demand, requesting that Commonwealth assume the defense of the 2017 Action as well, in the event that the 2017 Action proceeds beyond the pending appeal. On April 30, 2019, Commonwealth denied plaintiffs' claims and refused to provide a defense to the 2018 Action, relying on two exclusions contained in the Policy.

On October 8, 2019, plaintiffs filed the instant lawsuit against Commonwealth in the Dorchester County Court of Common Pleas, alleging breach of the insurance contract and bad faith. ECF No. 1-1. On November 15, 2019, Commonwealth removed the matter to this court, based on the court's diversity jurisdiction over the subject matter.

ECF No. 1.  On March 25, 2020, plaintiffs filed a motion for partial summary judgment

on the issue of Commonwealth's duty to defend.  ECF No. 14.  On April 15, 2020,

Commonwealth responded to the motion, ECF No. 17, and filed its own motion for

summary judgment, ECF No. 18.  On April 21, 2020, plaintiffs responded to

Commonwealth's motion, ECF No. 19, incorporating arguments they asserted in their

motion for partial summary judgment.  On April 28, 2020, Commonwealth replied.  ECF

No. 20.  Plaintiffs did not file a reply with respect to their motion for partial summary

judgment, and the time to do so has now expired.  As such, the motions are now ripe for

the court's consideration.

## II.  STANDARD

Summary judgment shall be granted "if the pleadings, the discovery and

disclosure materials on file, and any affidavits show that there is no genuine dispute as to

any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R.

Civ. P. 56(c).  Rule 56(c) of the Federal Rules of Civil Procedure requires that the district

court enter judgment against a party who, "'after adequate time for discovery . . . fails to

make a showing sufficient to establish the existence of an element essential to that party's

case, and on which that party will bear the burden of proof at trial.'"  Stone v. Liberty

Mut. Ins. Co., 105 F.3d 188, 190 (4th Cir. 1997) (quoting Celotex Corp. v. Catrett, 477

U.S. 317, 322 (1986)).  "[T]his standard provides that the mere existence of some alleged

factual dispute between the parties will not defeat an otherwise properly supported

motion for summary judgment; the requirement is that there be no genuine issue of

material fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986).  "Only

disputes over facts that might affect the outcome of the suit under the governing law will

properly preclude the entry of summary judgment." Id. at 248.  "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Id.

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Id. at 249.  When the party moving for summary judgment does not bear the ultimate burden of persuasion at trial, it may discharge its burden by demonstrating to the court that there is an absence of evidence to support the non-moving party's case.  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  The non-movant must then "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Id. at 322.

Any reasonable inferences are to be drawn in favor of the nonmoving party. Anderson, 477 U.S. at 255, Webster v. U.S. Dep't of Agric., 685 F.3d 411, 421 (4th Cir. 2012).  However, to defeat summary judgment, the nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence.  See Anderson, 477 U.S. at 252; Stone, 105 F.3d at 191.  Rather, "a party opposing a properly supported motion for summary judgment . . . must 'set forth specific facts showing that there is a genuine issue for trial.'"  Bouchat, 346 F.3d at 522 (quoting Fed. R. Civ. P. 56(e) (2002) (amended 2010)).  If the adverse party fails to provide evidence establishing that the fact finder could reasonably decide in his favor, then summary judgment shall be entered "regardless of '[a]ny proof or evidentiary requirements imposed by the substantive law.'"  Id. (quoting Anderson, 477 U.S. at 248).

### III.   DISCUSSION

In their motion, plaintiffs ask the court to find that Commonwealth has a duty to defend plaintiffs in both the 2017 Action and 2018 Action as a matter of law.  In response, Commonwealth asks this court to deny plaintiffs' motion, find that it does not have a duty to defend plaintiffs in either the 2017 Action or the 2018 Action, and grant summary judgment in its favor on both of plaintiffs' claims.  The court addresses Commonwealth's duty to defend plaintiffs with respect to each underlying action in turn. Before delving into the substance of the matter, however, the court first reviews the applicable canons of South Carolina insurance law.

### A.  South Carolina Insurance Law

In South Carolina, "an insurance policy is a contract between the insured and the insurance company, and the terms of the policy are to be construed according to contract law." Auto Owners Ins. Co. v. Rollison, 663 S.E.2d 484, 487 (S.C. 2008).  "The cardinal rule of contract interpretation is to ascertain and give legal effect to the parties' intentions as determined by the contract language." Beaufort Cty. Sch. Dist. v. United Nat'l Ins. Co., 709 S.E.2d 85, 90 (S.C. Ct. App. 2011) (citing Schulmeyer v. State Farm Fire & Cas. Co., 579 S.E.2d 132, 134 (S.C. 2003)).  "If the contract's language is clear and unambiguous, the language alone, understood in its plain, ordinary, and popular sense, determines the contract's force and effect." Id. (citing Schulmeyer, 579 S.E.2d at 134) However, an insurance contract which is "in any respect ambiguous or capable of two meanings" must be construed strictly against its drafter, the insurer. Reynolds v. Wabash Life Ins. Co., 161 S.E.2d 168, 169 (S.C. 1968)).  "A contract is ambiguous when it is capable of more than one meaning when viewed objectively by a reasonably intelligent

6

person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." Hawkins v. Greenwood Dev. Corp., 493 S.E.2d 875, 878 (S.C. Ct. App. 1997). The provisions of an insurance contract should be considered within the context of the policy as a whole, "and one may not, by pointing out a single sentence or clause, create an ambiguity." Yarborough v. Phoenix Mut. Life Ins. Co., 225 S.E.2d 344, 348 (S.C. 1976).

An insurer's obligation under a policy of insurance is defined by the terms of the policy itself and cannot be enlarged by judicial construction. S.C. Ins. Co. v. White, 390 S.E.2d 471, 474 (S.C. Ct. App. 1990). A policy clause extending coverage must be liberally construed in favor of coverage, while insurance policy exclusions are construed most strongly against the insurance company, which also bears the burden of establishing the exclusion's applicability. M & M Corp. of S.C. v. Auto–Owners Ins. Co., 701 S.E.2d 33, 35 (S.C. 2010); Owners Ins. Co. v. Clayton, 614 S.E.2d 611, 614 (S.C. 2005). "However, if the intention of the parties is clear, courts have no authority to torture the meaning of policy language to extend coverage that was never intended by the parties." S.C. Farm Bureau Mut. Ins. Co. v. Wilson, 544 S.E.2d 848, 850 (S.C. Ct. App. 2001).

South Carolina courts determine whether a duty to defend exists based on the allegations in the underlying complaint. USAA Prop. & Cas. Ins. Co. v. Clegg, 661 S.E.2d 791, 796 (S.C. 2008). In making such a determination, the court must construe the allegations of the complaints liberally, "with all doubts resolved in favor of the insured." Union Ins. Co. v. Soleil Grp., Inc., 465 F. Supp. 2d 567, 572 (D.S.C. 2006). "If the underlying complaint creates a possibility of coverage under an insurance policy,

7

the insurer is obligated to defend." <u>Isle of Palms Pest Control Co. v. Monticello Ins. Co.</u>, 459 S.E.2d 318, 319 (S.C. Ct. App. 1994). "However, an insurer has no duty to defend an insured where the damage was caused for a reason unambiguously excluded under the policy." <u>B.L.G. Enterprises, Inc. v. First Fin. Ins. Co.</u>, 514 S.E.2d 327, 330 (S.C. 1999). It is with these principles of South Carolina law in mind that the court determines Commonwealth's obligation to defend plaintiffs in the underlying actions.

### B.  The 2017 Action

In their motion, plaintiffs argue that Commonwealth has a duty to provide them with a defense to the 2017 Action. In response, Commonwealth argues that it has no duty to defend plaintiffs in the 2017 Action because plaintiffs never tendered proper notice and never made a proper demand with respect to the lawsuit and, even if they had, the 2017 Action falls within a clear exclusion to the Policy. With respect to the notice argument, Commonwealth contends that plaintiffs did not explicitly demand a defense to the 2017 Action. Commonwealth explains that plaintiffs' counsel sent an email on April 29, 2019 notifying Commonwealth of the 2017 Action and stating in pertinent part:

> There is another case, 2017-CP-18-0987, filed by [Morphew] immediately after [plaintiffs] closed on the home. In that case, Ms. Morphew is claiming ownership of the home through other causes of action, namely constructive trust. It was dismissed following my motion to dismiss, and it is now on appeal awaiting a decision by the S.C. Court of Appeals. My clients would request representation in that case by provided by [sic] Commonwealth, <u>should it go farther than the current appeal</u>.

ECF No. 18-10 at 2 (emphasis added). Because the dismissal of the 2017 Action remains pending with the South Carolina Court of Appeals, Commonwealth argues, "[t]here is nothing for Commonwealth to do" with respect to the 2017 Action, and "Commonwealth is proceeding exactly as Plaintiffs' [sic] requested." ECF No. 18-1 at 7.

In South Carolina, an insurer's duty to defend arises "when an underlying suit is brought against the insured with allegations that are arguably within the scope of the insurance policy's coverage", not when the insured tenders proper notice of the underlying suit or explicitly demands a defense thereto. Episcopal Church in S.C. v. Church Ins. Co. of Vermont, 53 F. Supp. 3d 816, 828 (D.S.C. 2014) (citing Allstate Ins. Co. v. Wilson, 193 S.E.2d 527, 530 (S.C. 1972)). Because an insured's duty to provide notice of a lawsuit is not a condition precedent to an insurer's duty to defend, "the insurer must show substantial prejudice to the insurer's rights before recovery is barred." Id. (citing Vermont Mut. Ins. Co. v. Singleton By & Through Singleton, 446 S.E.2d 417, 421 (S.C. 1994) (internal quotation marks omitted)).

Therefore, in order for plaintiffs' allegedly insufficient notice and demand to extinguish Commonwealth's duty to defend, Commonwealth must show that the flawed notice and demand resulted in substantial prejudice to its rights. The parties do not present arguments with respect to this issue, and the facts before the court do not provide a proper basis from which it could resolve the issue on summary judgment. However, the court need not determine whether plaintiffs' untimely notice and equivocal demand for defense with respect to the 2017 Action discharged Commonwealth of their duty to defend plaintiffs in that action because the court agrees with Commonwealth's second argument, that even if plaintiffs had tendered flawless notice and made an unambiguous demand for a defense, the 2017 Action would not receive coverage under the Policy.

The Policy's insuring agreement states that it "insures . . . against actual loss, including any costs, attorneys' fees and expenses provided under this Policy," provided that the loss "result[s] from one or more of the Covered Risks set forth below." ECF No.

14-1 at 1.  Relevant here, three of the included covered risks are:  "Someone else has rights affecting Your Title because of leases, contract, or options," "Someone else has an easement on the Land," and "Someone else has a right to limit Your use of the Land."  Id. at 2.  The Policy also includes a number of exclusions and exceptions that limit the extended coverage.  Relevant here, "Exception from Coverage" 10[1] provides:  "You are not insured against loss, costs, attorneys' fees, and expenses resulting from . . . [m]atters, claims, losses arising from or under the lawsuits: 2013CP18-183 and 2016CP18-1706." ("Policy Exception 10").  Id. at 8.  In other words, Policy Exception 10 explicitly excludes from coverage matters that arise from the 2013 Action and/or the 2016 Action.

Commonwealth argues that the 2017 Action arises from the 2013 Action and thus falls within Policy Exception 10 because "the 2017 [Action], by its own terms, is an attack on the prior litigation that resulted in the [court's award of specific performance]." ECF No. 18-1 at 8.  Plaintiffs fail to respond to Commonwealth's argument.  The court agrees with Commonwealth.

A plain of reading Morphew's complaint in the 2017 Action makes clear that the lawsuit arises from the 2013 Action, the very risk Policy Exception 10 contemplates and excludes from coverage.   To recap, the 2013 Action was the initial litigation over the Property between Morphew, plaintiffs, and the sellers, which resulted in an award of

---

[1] Although this exclusion in the Policy is listed as an "exception" to coverage, the court deems it an exclusion and applies in its interpretation the law applicable to exclusions because the effect of the exception is to exclude coverage that the Policy would otherwise extend.  See EXCLUSION, Black's Law Dictionary (11th ed. 2019) (defining exclusion as "[a]n insurance-policy provision that excepts certain events or conditions from coverage"); see also Auto-Owners Ins. Co. v. Newsome, 2013 WL 5797729, at *5 (D.S.C. Oct. 25, 2013) ("[F]or a provision in an insurance contract to operate as an exclusion it need not specifically be labeled as such.").

specific performance in favor of plaintiffs.  Morphew's complaint in the 2017 Action

includes three causes of action, each of which directly attacks the process or outcome of

the 2013 Action.  Morphew's first cause of action, labeled "right to possession", alleges

the same facts that served as the basis for her original claim to the Property in the 2013

Action and asserts that plaintiffs obtained the property "unlawfully" in the 2013 Action.

ECF No. 18-4 at 3.  Morphew's remaining two causes of action for "abuse of process"

and "fraud" allege that plaintiffs committed various unlawful and fraudulent acts

throughout the life of the 2013 Action, including presenting false testimony, blackmailing

the sellers, and "fool[ing]" the Master-In-Equity with fraudulent misrepresentations.  Id.

at 4–10.

      In short, each allegation in Morphew's 2017 complaint directly challenges the

result of the 2013 Action, the legitimacy of the 2013 Action, or both.[2]  Commonwealth

did not need to look beyond the allegations of that complaint to determine that the 2017

Action arises from the 2013 Action and thus falls within Policy Exception 10.  Neither

Morphew's complaint in the 2017 Action nor Policy Exception 10 is ambiguous, and the

conclusion that the 2017 Action falls within Policy Exception 10 is not arguable.

Therefore, coverage under the Policy does not extend to the 2017 Action as a matter of

law, and Commonwealth has no duty to defend plaintiffs with respect to the same.  See

B.L.G. Enterprises, Inc., 514 S.E.2d at 330 ("[A]n insurer has no duty to defend an

---

      [2] Indeed, in dismissing Morphew's 2017 complaint, Judge Goodstein reached the
same conclusion, noting that each of Morphew's then-pending legal actions "arise out of
her alleged ownership in the Property or out of the fraud that the [plaintiffs allegedly]
perpetrated on the court in the [2013] [A]ction."  ECF No. 18-5 at 4.

insured where the damage was caused for a reason unambiguously excluded under the policy.")

### C.  The 2018 Action

In their summary judgment motion, plaintiffs also argue that Commonwealth has a duty to provide a defense to the 2018 Action.  As discussed above with respect to the 2017 Action, whether an insurer has a duty to defend its insured depends on the allegations of the underlying complaint.  By way of review, Morphew filed the 2018 Action after her complaint in the 2017 Action was dismissed.  In the 2018 Action, Morphew claims ownership of a water and sewer easement located on the Property.  Morphew's pro se complaint in the 2018 Action asserts five claims against plaintiffs: (1) "trespass upon easement", (2) "intentional interference with and obstruction of an easement", (3) nuisance, (4) breach of contract, and (5) "negligence and strict liability".  ECF No. 14-3 at 16, 19, 20, and 22.  Commonwealth denied the plaintiffs' demand for defense, separating Morphew's claims into two categories and providing its grounds for denial with respect to each category.  First, with respect to Morphew's tort claims, Commonwealth explained that the Policy only covers risks to plaintiffs' title in the Property and that Morphew's tort claims do not receive coverage because they do not assert an ownership interest in the Property.  In their motion for summary judgment, plaintiffs do not argue that Morphew's tort claims receive coverage under the Policy.[3]

---

[3] In their motion, plaintiffs do not contest Commonwealth's determination that the Policy does not extend coverage to Morphew's tort claims.  Further, Commonwealth reiterates this point in its own summary judgment motion, and plaintiffs fail to dispute the issue by way of a response.  As such, the court finds the issue to be undisputed.

The court agrees with Commonwealth that Morphew's tort claims in the 2018 Action do not receive coverage under the Policy as a matter of law.

Morphew's remaining claims in the 2018 Action do assert an ownership interest in the Property because they assert ownership of a water and sewer easement on the Property. The parties dispute whether these claims receive coverage under the Policy and thus whether Commonwealth has a duty to defend plaintiffs in the 2018 Action. Commonwealth concedes that the insuring language of the Policy extends coverage to Morphew's allegations of ownership of the water and sewer easement. However, Commonwealth argues that the claims are excluded from coverage by the fourth exclusion to the Policy and, alternatively, the fourth exception to the Policy. First, Commonwealth argues that the relevant claims fall within an exception to the Policy that excludes claims to easements not shown by the public records ("Policy Exception 4"). Second, Commonwealth argues that the claims fall within an exclusion to the Policy that excludes coverage for risks created by or known to plaintiffs prior to the Policy's inception date ("Policy Exclusion 4"). Plaintiffs disagree with Commonwealth's determinations and assert that because the claims do receive coverage, Commonwealth owes plaintiffs a duty to provide a defense to the 2018 Action.[4] The court addresses each ground for denial in turn.

---

[4] As an additional argument, plaintiffs seem to indicate that Commonwealth had a duty to engage independent counsel to review plaintiffs' claim and make a coverage determination. See ECF No. 14 at 8 ("[I]nhouse counsel for Commonwealth made all coverage determinations, despite the Plaintiffs' request that local counsel be retained to provide a coverage opinion."). Unsurprisingly, plaintiffs point to no South Carolina law that imposes such a duty on insurers, and the court declines to impose such a duty in the absence of any supporting law. Therefore, to the extent plaintiffs argue that Commonwealth breached a duty to obtain independent legal review of their claims, the court rejects that argument.

### 1.    Policy Exception 4: Easements Not Shown by the Public Record

Policy Exception 4 states that plaintiffs are "not insured against any loss, costs, attorneys' fees, and expenses resulting from . . . [e]asements or claims of easements not shown by the public records." ECF No. 14-1 at 8. Commonwealth argues that Policy Exception 4 excludes Morphew's easement claims from coverage because each "assert[s] a claim to an unrecorded easement arising from the [Purchase] Contract, which was[] not recorded." ECF No. 18-1 at 14. Indeed, Morphew's complaint clearly asserts a claim to an easement that is not recorded in the public records. See ECF No. ECF No. 14-3 at 16 (alleging that "[Plaintiffs] specifically agreed to grant water and sewer easement to the adjacent 2-acre property[] at purchase of the 6-acre tract . . ." and "[Morphew] is entitled to an injunction to permanently enjoin [plaintiffs] from interfering with [Morphew's] use of the easement]."). As such, Morphew's claim to an easement in the 2018 Action clearly falls within Policy Exception 4.

In response, plaintiffs assert three arguments. First, plaintiffs contend that the Policy's coverage for adverse easement claims is illusory because exclusions to the Policy eliminate the very coverage the Policy purports to extend. Second, plaintiffs contend that Morphew's alleged right to use the water and sewer line is not a claim for a "future easement."[5] Third, plaintiffs claim that the easement does not fall within Policy

---

[5] Plaintiffs state, "Commonwealth failed to consider that Morphew was using the title, 'easement,' when the complaint in the 2018 [Action] unequivocally alleges rights to the Plaintiffs' water line, not future easement." ECF No. 14 at 11. The court has a difficult time understanding both the premise and the legal import of this argument. There is no doubt that Morphew claims a right to use plaintiffs' sewer and water line and that the Policy excludes coverage with respect to claims to unrecorded easements. Whatever significance plaintiffs assign to the distinction between a "future easement" and "rights to Plaintiffs' water line" is lost on the court. However, the court need not

Exception 4 because the Purchase Contract is part of the public record. The court agrees with plaintiffs' first argument that exclusions to the Policy renders its adverse easement claim coverage illusory and therefore does not reach their second or third arguments.

South Carolina recognizes the illusory coverage doctrine to protect insureds where the terms of an insurance policy exclude from coverage "the very risk contemplated by the parties," rendering a policy provision "virtually meaningless." Isle of Palms Pest Control Co. v. Monticello Ins. Co., 459 S.E.2d 318, 321 (S.C. Ct. App. 1994), writ granted in part on other grounds, decision aff'd, 468 S.E.2d 304 (1996). Under the doctrine, the "literal interpretation of policy language will be rejected where its application would lead to unreasonable results and the definitions as written would be so narrow as to make coverage merely illusory." S.C. Farm Bureau Mut. Ins. Co. v. Kennedy, 730 S.E.2d 862, 867 (S.C. 2012).

Here, the Policy extends coverage for losses that arise from "covered risks", including the risk that "[s]omeone has an easement on the Land." ECF No. 14-1 at 2. The Policy also contains two exceptions with respect to easements. First, as outlined above, the Policy includes Policy Exception 4, which excludes from coverage loss resulting from "[e]asements or claims of easements not shown by the public records." ECF No. 14-1 at 8. Additionally, Policy Exception 5 excludes loss resulting from "easements . . . appearing in the public record . . . ." Id. In other words, the Policy extends coverage for adverse easement claims but excludes that coverage where the easement is either recorded in the public record or not recorded in the public record. Of

---

strain itself further to understand plaintiffs' meaning because it agrees with plaintiffs' preceding argument.

course, an easement must either be recorded or not recorded.  As such, the provisions,

literally interpreted, simultaneously extend and eliminate coverage, thereby excluding the

"very risk contemplated by the parties" and rendering "meaningless" the Policy provision

that insures against adverse easement claims.  Isle of Palms Pest Control, 459 S.E.2d at

321.

    The court can think of no policy provisions better suited for application of the

illusory coverage doctrine.  The Policy extends coverage for adverse easement claims and

simultaneously, by way of two exclusions, completely eliminates the very coverage it

purports to extend.  An insurance policy that insures coin flips but excludes coverage in

the event that the coin lands on heads and in the event the coin lands on tails provides no

insurance coverage at all.  Thus, the Policy's coverage with respect to adverse easement

claims is illusory, and the court will not enforce its unambiguous language because "its

application would lead to unreasonable results."  S.C. Farm Bureau Mut. Ins. Co., 730

S.E.2d at 867 (S.C. 2012).

    In response, Commonwealth argues that the Policy's coverage for adverse

easement claims is not illusory because "[p]olicy exclusions are not to be read

cumulatively."  ECF No. 17 at 19.  In other words, Commonwealth contends that a court

must consider exclusions in complete isolation and, when considering a single exclusion,

must turn a blind eye to the effect of all other limiting policy language.  That is not the

law in South Carolina.  Commonwealth derives its distortion of South Carolina law from

Engineered Prod., Inc. v. Aetna Cas. & Sur. Co., 368 S.E.2d 674 (S.C. Ct. App. 1988).

There, the South Carolina Court of Appeals held that, in interpreting an insurance policy,

a court may not insert ambiguity into the otherwise straightforward language of an

exclusion by considering the language of other exclusions.  Id. at 675.  Engineered Products states a law of insurance contract interpretation; it certainly does not establish the troubling proposition that a court is prohibited from considering the cumulative effect of exclusions on insurance coverage.  If Commonwealth's statement of the law were correct, an insurer could manipulate coverage and circumvent the illusory coverage doctrine by wholly eliminating insurance coverage through the cumulative effect of multiple exclusions.  South Carolina law does not leave room for such an asinine result.  Neither the plain import of Engineered Products nor common sense supports Commonwealth's interpretation of the law.  Therefore, the court finds that Commonwealth may not exclude coverage pursuant to Policy Exception 4 because enforcement of the exclusion would render aspects of the Policy's coverage illusory.

Although it has no effect on the legal analysis of this order, the court feels compelled to clear up one additional oddity with respect to this issue, given the ink the parties dedicate to the matter in their briefs.  As plaintiffs point out throughout their motion, Commonwealth attempted to amend the Policy shortly after plaintiffs notified Commonwealth of the 2018 Action, issuing an endorsement that purported to delete Policy Exception 5, the recorded easement exception, from the Policy.  According to Commonwealth, it issued the endorsement because it "mistakenly included" Policy Exception 5 "erroneously" and sought to correct its mistake.  ECF No. 18-1 at 6, 18.  Commonwealth's attempt to amend the Policy has no legal effect on the court's analysis.  The court must interpret the Policy according to the canons of contract law, and whether a contract has been breached is governed by the provisions of the contract at the time of the alleged breach.  Changes or amendments to a contract that are made after an alleged

breach, whether valid or invalid, are simply beside the point. Likewise, the court analyzes the language of an insurance policy as it existed when the insured's claim under the policy arose. Commonwealth's after-the-fact change to the Policy's terms, while very likely improper and invalid, has no effect on the instant issues because the court analyzes the plain language of the Policy as it existed when the parties entered into the agreement. The court therefore ignores any changes Commonwealth attempted to make to the Policy after plaintiffs notified it of the 2018 Action.

## 2. Policy Exclusion 4: Risk Created by or Known to Insured

In the alternative, Commonwealth argues that even if the allegations of the 2018 Action do not fall within Policy Exception 4, they fall squarely within Policy Exclusion 4 and therefore do not receive coverage. Policy Exclusion 4 states:

> You are not insured against loss, costs, attorneys' fees, and expenses resulting from:
>
> 4. Risks:
>
> a. that are <u>created, allowed, or agreed to by You</u>, whether or not they are in the Public Records;
>
> b. that are <u>Known to You at the Policy Date</u>, but not to [Commonwealth], unless they are recorded in the Public Records at the Policy Date . . . .

ECF No. 14-1 at 4 (emphasis added). Thus, Policy Exclusion 4 excludes from coverage risks that were either (a) created/agreed to by plaintiffs or (b) known to plaintiffs but not known to Commonwealth prior to the inception date of the Policy. "Known" is a defined term in the Policy and requires actual knowledge. Id.

In 2012, plaintiffs entered into the Purchase Contract to purchase the Property. Attached to and incorporated by reference into the Purchase Contract is an addendum that includes the following handwritten provision: "Buyer shall grant water & sewer easement

18

to adjacent 2 acres." (the "Water and Sewer Easement Provision").  ECF No. 18-2 at 9.

The addendum is signed and dated by both plaintiffs, just below the Water and Sewer

Easement Provision.  As the court discussed above, at some point prior to plaintiffs

closing on the Property in 2017, Morphew acquired the two-acre tract adjacent to the

Property.

  Morphew's complaint in the 2018 Action makes clear that her claim to the water

and sewer easement derives solely from the Water and Sewer Easement Provision in the

Purchase Contract.  The very first allegation under Morphew's first cause of action for

"Trespass Upon Easement" states that plaintiffs "specifically agreed to grant water and

sewer easement to the adjacent 2-acre property . . . at purchase of [the Property]."  ECF

No. 18-8 at 13.  That allegation includes a citation to the addendum to the Purchase

Contract, which Morphew attached to her complaint.  As another example, Morphew's

breach of contract claim, which alleges that plaintiffs breached the Purchase Contract by

not adhering to the Water and Sewer Easement Provision, alleges that plaintiffs "have

failed or intentionally failed to provide [a] water easement to the adjacent 2-acre property

[] as specifically conditioned within their sales contract . . . ."  Id. at 18.  In short, the

2018 Action is, in essence, an action to enforce the Water and Sewer Easement Provision

of the Purchase Contract, and each allegation of Morphew's complaint that claims

ownership of a water and sewer easement on the Property derives that claim solely from

the Water and Sewer Easement Provision in the Purchase Contract.

  By consenting to the addendum, which included the Water and Sewer Easement

Provision, plaintiffs created the risk that an owner of the adjacent two-acre tract would

seek to enforce his or her right to a water and sewer easement on the Property.  It does

not require much analytical strain for the court to conclude that when a person agrees in a contract to grant an interest to a third party, that person creates or agrees to the risk that the third party might later lay claim to that interest.[6]  At the very least, a person who agrees in a contract to grant a certain right knows of the risk that someone might later seek to enforce that right.  Regions Bank v. Schmauch, 582 S.E.2d 432, 440 (S.C. Ct. App. 2003) (stating that "[a] person who signs a contract or other written document cannot avoid the effect of the document by claiming he did not read it" and that "[a] person signing a document is responsible for reading the document and making sure of its contents").  Therefore, based on the Water and Sewer Provision of the Purchase Contract, plaintiffs created, agreed to, or, at the very least, knew of the risk that an owner of the adjacent two-acre tract might seek to enforce a water and sewer easement on the Property.  Indeed, that was the very risk realized by the plaintiffs in the 2018 Action.  As such, Morphew's claims in the 2018 Action arise directly from a risk that plaintiffs created, agreed to, or at least knew about at the Policy's inception date.

In response, plaintiffs assert two arguments.  First, plaintiffs puzzlingly attempt to draw a distinction between the water and sewer easement created by the Water and Sewer Easement Provision in the Purchase Contract and the water and sewer easement that Morphew claims ownership of the 2018 Action.  Specially, plaintiffs argue that

---

[6] Throughout their motion, Commonwealth cites to a lawsuit from this court, Rogers v. Stewart Title Guaranty Co., No. 2:07-3998-CWH (D.S.C. 2007), for the proposition that Policy Exclusion 4 is unambiguous.  However, Commonwealth does not cite to a reporter, online database, or specific docket entry to identify the specific order to which it refers.  After looking for itself, the court was unable to identify the order on which Commonwealth relies.  However, the court finds that it does not need to rely the unidentified opinion in Rogers to agree with Commonwealth's assertion that the language of Policy Exception 4 is unambiguous and should be construed according to its plain meaning.

Commonwealth wrongly came to the conclusion that the water and sewer easement created by the Water and Sewer Easement Provision "and Morphew's 2018 claim to use the Plaintiffs' water line were one in the same." ECF No. 14 at 12. Plaintiffs continue that because "plaintiffs had expressly denied that the referenced 'easement' and use of the water line were the same", their denial created, at a minimum, a possibility of coverage. Id. There are several problems with plaintiffs' argument.

For one, whether an insurer has a duty to defend is a legal determination, determined by the allegations of the underlying complaint. An insured's interpretation of the legal implications of that complaint are irrelevant. An insured cannot create a "possibility of coverage" simply by contending that his or her claim is covered under an insurance policy based on his or her determination that the allegations of the underlying complaint do not fall within an exclusion to the policy. Likewise, plaintiffs' opinion that that the water and sewer easement created by the Water and Sewer Easement Provision is not the same right as the water and sewer easement that Morphew claims in the 2018 Action is irrelevant to the legal determination of the whether the 2018 Action gives rise to a duty to defend. Moreover, the relevant question is not whether the easement plaintiffs granted in 2012 and the easement Morphew claims in the 2018 Action are the same right; the relevant question is whether plaintiffs created or agreed to the risk from which the 2018 Action arises. [7] The answer to that question is simple. Plaintiffs granted

---

[7] The court admits some difficulty following the "logic" of plaintiffs' argument. Plaintiffs seem to argue that the easement plaintiffs granted in the Purchase Contract and the property right Morphew claims in the 2018 action are distinct. Putting aside the fact that this question is irrelevant to Commonwealth's duty to defend, the court must note its failure to identify any distinction between the property interest plaintiffs granted and the one Morphew claims. Morphew quotes the language of the Water and Sewer Easement Provision to state that she has a right to use the water and sewer line on the Property.

a water and sewer easement to the neighboring two-acre property through the Water and

Sewer Easement Provision.  In the 2018 Action, Morphew, the owner of that neighboring

property, seeks to enforce the Water and Sewer Easement Provision.  As such, it is clear

that Morphew's claim to the water and sewer easement in the 2018 Action arises from the

Water and Sewer Easement Provision, a risk that plaintiffs created or agreed to in the

Purchase Contract.  The court rejects plaintiffs' argument to the contrary.

Second, plaintiffs argue that whatever risk they created through the Water and

Sewer Easement Provision has since been eliminated by the "merger doctrine."  Plaintiffs

explain that the Water and Sewer Easement Provision was "merged out of existence

when the deed was issued," nullifying any risk to plaintiffs' title that existed prior to the

delivery of the deed.  ECF No. 14 at 14.  To be clear, the merger doctrine's legal effect

on the Water and Sewer Easement Provision is not the issue before the court.  The

question the court must confront here is whether the merger doctrine eliminates the risk

to plaintiffs' title to the Property.  The court finds that it does not.

South Carolina first recognized the merger doctrine in 1885, when St. Phillip's

Church sought to enforce a provision in an agreement between it and Zion Presbyterian

Church, in which the parties agreed that the purchase property must be home to a

---

Nevertheless, plaintiffs attempt to divorce their granting of the water and sewer easement
from Morphew's claim thereto, noting that "Morphew . . . was simply using the
'easement' title, when in fact, based on the complaint, she clearly wanted to use the
Plaintiffs' water line."  ECF No. 14 at 9.  Of course, the right to use another's property is
precisely what an easement is.  See EASEMENT, Black's Law Dictionary (11th ed.
2019) ("An interest in land owned by another person, consisting in the right to use or
control the land . . . for a specific limited purpose . . .").  Plaintiffs granted an easement,
or the right to use a water and sewer line on the Property, and in the 2018 Action,
Morphew seeks to enforce that right to use a water and sewer line on the Property.  The
court fails to see any distinction.

Presbyterian church.  St. Philip's Church v. Zion Presbyterian Church, 23 S.C. 297, 300 (1885).  Because the provision limiting the use of the land was included in a lease agreement between the parties but not included in the subsequent deed, the Supreme Court of South Carolina refused to enforce the provision, holding that the two agreements "merged, and that the conditions annexed to the lease were extinguished" by the subsequent deed.  Id. at 307.  Since St. Phillip's, South Carolina courts have clarified the upshot of the merger doctrine:  "The execution, delivery, and acceptance of a deed varying from the terms of [an] antecedent contract indicates an amendment of the original contract, and generally the rights of the parties are fixed by their expressions as contained in the deed."  Shoney's, Inc. v. Cooke, 353 S.E.2d 300, 303 (S.C. Ct. App. 1987) (quoting Charleston & W. C. Ry. Co. v. Joyce, 99 S.E.2d 187, 193 (S.C. 1957))

South Carolina has also established several exceptions to the merger doctrine. For example, the merger doctrine is inapplicable where there is mistake or fraud in the execution of the deed.  Charleston & W. C. Ry. Co., 99 S.E.2d at 193.  Further, under the contrary intent exception, the party denying merger can enforce the provisions of a pre-deed contract if it proves "by clear and convincing evidence that merger was not intended."  Hughes v. Greenville Country Club, 322 S.E.2d 827, 828 (S.C. Ct. App. 1984).  South Carolina also recognizes the "collateral agreement" exception, which excludes application of the merger doctrine to agreements that are distinct from the main purchase contract and contain terms that might be naturally made in a contract, separate

from a deed. <u>Shoney's, Inc.</u>, 353 S.E.2d at 304. Suffice it to say that exceptions to the merger doctrine make its application far from straightforward.[8]

In sum, the merger doctrine is a complex legal doctrine that has received disparate treatment from courts throughout South Carolina. South Carolina recognizes at least three broad exceptions to the doctrine, and Morphew is free to argue each exception in the 2018 Action to enforce the Water and Sewer Easement Provision. Therefore, the court cannot say that the merger doctrine renders the Water and Sewer Easement Provision in the Purchase Contract unenforceable. As such, the court finds that the merger doctrine does not eliminate the risk to plaintiffs' title that they created through the Water and Sewer Easement Provision and does nothing to remove the 2018 Action from parameters of Policy Exclusion 4. Thus, the 2018 Action does not receive coverage under the Policy, and Commonwealth thus has no duty to defend plaintiffs in the 2018 Action.

Because the court finds that Commonwealth has no duty to defend plaintiffs in either the 2017 Action or the 2018 Action, the court denies plaintiffs' motion for partial summary judgment and grants Commonwealth's motion for summary judgment with respect to plaintiffs' first cause of action for breach of the insurance contract. Further, because Commonwealth had reasonable grounds for its refusal to defend, the court grants Commonwealth's motion for summary judgment with respect to plaintiffs' remaining cause of action for bad faith. <u>See</u> <u>Helena Chem. Co. v. Allianz Underwriters Ins. Co.</u>,

---

[8] Recognizing the staggering number of exceptions to the merger doctrine that courts have developed over the years, the South Carolina Court of Appeals joked that the two exceptions to the doctrine it considered in <u>Hughes</u> were "like the rest of the ninety exceptions" to the doctrine. <u>Hughes</u>, 322 S.E.2d at 828 n.1 (S.C. Ct. App. 1984).

594 S.E.2d 455, 462 (S.C. 2004) (". . . if there is a reasonable ground for contesting a claim, there is no bad faith.").

## IV.   CONCLUSION

For the foregoing reasons the court **DENIES** plaintiffs' motion for summary judgment and **GRANTS** Commonwealth's motion for summary judgment.

**AND IT IS SO ORDERED.**

_____

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**June 12, 2020**
**Charleston, South Carolina**

25